IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CLARK MACKENDRICK,

      Petitioner,

v.                                    CASE NO. 4:11-cv-460-WS-GRJ

SECRETARY, FLORIDA DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  Respondent filed a response and an appendix with relevant portions of the state-court record.  Docs. 7, 10, 12.[1]  Petitioner obtained counsel, and counsel filed a reply.  Doc. 20.  Upon due consideration of the Petition, the response, the reply, and the state-court record, the undersigned recommends that the Petition be denied.[2]

## Summary of State-Court Proceedings

Petitioner's state court proceedings are summarized briefly below.  Petitioner was charged by information with lewd and lascivious molestation on a person less than twelve years old.  Respondent's Exhibit A at 7, hereinafter "Ex."  The charges arose

---

[1]The exhibits to Respondent's response have been filed under seal due to the nature of the underlying conviction.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

from an incident during a hunting trip in Liberty County, when Petitioner molested the young daughter of a friend who was hunting with him.  After a jury trial on July 20, 2005, Petitioner was convicted as charged.  *Id*. at 9.  Petitioner subsequently filed a motion for a new trial, which was denied.  *Id*. at 10-11; 41.  Petitioner was sentenced on August 22, 2005, to fifteen years imprisonment, followed by ten years of sex offender probation.  *Id*. at 24.

Petitioner appealed, but before filing his brief on direct appeal he moved to reconstruct the record.  Ex. F-1.  His motion was granted, and a hearing was held to reconstruct portions of the trial, such as sidebar conferences, that had not been transcribed by the court reporter.  Ex. F-2.  The transcript of the hearing was submitted as part of Petitioner's direct appeal.  His conviction and sentence was affirmed *per curiam* without opinion on March 27, 2007 by the Florida First District Court of Appeal (DCA).  Exs. A at 41; J.  The mandate issued on April 12, 2007.  Ex. J.  Petitioner's conviction became final 90 days later, on July 11, 2007, when the time for filing a petition for a writ of certiorari in the Supreme Court expired.  *See Bond v. Moore*, 309 F.3d 770 (11th Cir. 2002) (Petitioner has ninety days to seek certiorari in Supreme Court after direct review in state courts).

Petitioner next sought relief by filing through counsel a motion pursuant to Fla. R. Crim. P. 3.850 on May 2, 2008.  Ex. K.  The motion raised ten grounds for relief.  *Id*. at 1-55.  The state court set an evidentiary hearing on grounds 1, 3, and 5 though 9 of the motion.  *Id*. at 70.  After the evidentiary hearing, each ground of the motion was denied in a written order on February 17, 2010.  *Id*. at 73-81.  Petitioner appealed from the

denial of his motion, and the First DCA *per curiam* affirmed the denial without opinion

on June 24, 2011.  Ex. O; *Mackendrick v. State*, 64 So. 3d 1265 (Fla. 1ˢᵗ DCA

2011)(unpublished)(table).  The mandate issued July 20, 2011.  Ex. P.

The instant federal habeas petition, which Respondent concedes is timely, was

provided to prison officials for mailing on September 9, 2011.  Doc. 1.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct

appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion

requires that prisoners give the state courts a "full and fair opportunity" to resolve all

federal constitutional claims by "invoking one complete round of the State's established

appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim in each

appropriate state court, thereby affording the state courts a meaningful opportunity to

"pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v.

Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law,

the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11ᵗʰ Cir.

1999).  Federal habeas courts are precluded from reviewing the merits of procedurally

defaulted claims unless the petitioner can show either (1) cause for the failure to

properly present the claim and actual prejudice from the default, or (2) that a

fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at

1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and

convincing evidence that the state court's factual determination was "objectively

unreasonable" to rebut the presumption that the determination was correct. *Gill v.

Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1).  "'[A] state-court

factual determination is not unreasonable merely because the federal habeas court

would have reached a different conclusion in the first instance.'"  *Burt v. Titlow*, ___

U.S. ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130

S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the

state court's adjudication of the merits of the federal claim "resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly

established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

federal courts may be considered to the extent that they demonstrate how those courts

applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue.)

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Jones v. GDCP Warden*, ___ F.3d ___, 2014 WL 1088312, at *10 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1702 (2014). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Jones*, 2014 WL 1088312, at *10 (alteration in original) (quoting *Williams*, 529 U.S. at 413). The Supreme Court has interpreted § 2254(d) as requiring that, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 786–87 (2011).  "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S.Ct. at 1702.  In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion.  *See Richter*, 131 S.Ct. at 786–87; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S.Ct. at 786.

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable."  *Gill*, 133 F.3d at 1290.

### Ineffective Assistance of Counsel

Because most of Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to

carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts

with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.* at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Ground One: Inflammatory Statements Violated Petitioner's Right to Due Process

Petitioner alleges in ground one that his due process rights under the Fourteenth and Sixth Amendments were violated by statements that the victim's mother made during her testimony.  Specifically, Petitioner complains that in response to a question about Petitioner, the victim's mother stated "I didn't curse him out in front of him or anything.  I said that I would pray for him and I hoped that justice would be served, because I feel he's a very sick man.  This has gone on for generations. It's a generational –."  Defense counsel objected, the objection was sustained, and the trial judge issued a curative instruction that the jury was to disregard the last statement by the witness.  Petitioner alleges that this "inflammatory and prejudicial" comment rendered his entire trial fundamentally unfair, and the curative instruction was insufficient to cure the prejudice.  Doc. 1 at 3-4.

Petitioner alleges that this ground is exhausted because he raised it in his direct

appeal.  *Id*.  Respondent argues that this ground is unexhausted because his brief on appeal did not argue this issue in terms of a federal constitutional right.  Doc. 7 at 4.  In his reply, Petitioner concedes that he did not cite to the United States Constitution in his direct appeal, but contends that his entire argument on appeal was based upon the deprivation of a fair trial, and that this argument "was sufficient to alert the State Court of a Federal dimension to Mackendrick's argument."  Doc. 20 at 2.  Petitioner goes on to argue that "the use of this language – a fair and impartial trial – is so generally understood and widespread that even a lay person can understand that this is a constitutional right guaranteed by the U.S. Constitution."  *Id*. at 2-3.

As discussed above, before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To satisfy the exhaustion requirement of federal habeas claims, a prisoner must first "fairly present" his claim to each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct the alleged violations of its prisoners federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *Picard v. Connor*, 404 U.S. 270 (1971.)

The Court concludes that Petitioner has not exhausted this claim because he did not "fairly present" to the state appellate court a federal claim. His brief on appeal, when

he was represented by counsel, raised the issue, "The Admission of Highly Inflammatory Statements about Appellant's Alleged Family History of Sexual Impropriety Requires a Reversal of Appellant's Convictions" as "point one."   Ex. G at 14.  However, Petitioner cited almost exclusively to Florida state cases to support his argument.  The only federal citations were to three Ninth Circuit cases,[3] which discussed evidentiary rulings in the context of the Federal Rules of Evidence, not within constitutional dimensions.  Accordingly, because Petitioner did not present a federal claim that his constitutional rights were violated in his direct appeal this claim is unexhausted.

Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Bailey*, 172 F.3d  at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).

Petitioner makes no argument that he can establish cause and prejudice to overcome the default, and to the extent Petitioner is attempting to assert a claim of actual innocence in order to escape the procedural bar of his claim, he is unable to do so.  To state a credible claim of actual innocence, a petitioner must present new reliable

---

[3]Those three cases are: *United States v. Gillespie*, 852 F.2d 475 (9th Cir. 1988); *Cohn v. Papke*, 655 F.2d 191 (9th Cir. 1981); and *United States v. Birrell*, 421 F.2d 665 (9 th Cir. 1970).

evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995.)  Petitioner alleges no new evidence to justify his claim of actual innocence, and furthermore, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390 (1993).  Petitioner has not raised a claim of any newly discovered evidence, and even assuming, *arguendo*, that Petitioner could raise a freestanding newly discovered evidence claim, it would fail because the he cannot show an independent constitutional violation which is "contrary to" or an "unreasonable application of" clearly established federal law.

Even assuming, however, that this claim was not procedurally defaulted, there is no basis for federal habeas relief on the merits of the claim.[4]  Petitioner's trial counsel objected to the statement by the victim's mother, and the objection was sustained.  The trial court issued a curative instruction for the jury to disregard the comment.  Jurors are presumed to follow the instructions given by the trial court.  *See, e.g., Raulerson v. Wainwright*, 753 F. 2d 869, 872 (11th Cir. 1985).  There is no indication that this statement, which the jurors were told to disregard, in the context of the entire trial had an undue effect on the trial proceedings, besides Petitioner's bare assertion that this statement rendered his entire trial unfair.

---

[4] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits, notwithstanding Petitioner's failure to exhaust state court remedies.

Accordingly, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of federal law, and should be denied.

### Ground Two: Fundamental Error Occurred where Petitioner was Excluded from Critical Stages of His Trial

In ground two, Petitioner alleges that "[i]t was fundamental error for appellant to be excluded from critical stages of his trial including jury selection, objections, and legal arguments at sentencing."  Doc. 1 at 6.  Petitioner raised this claim as "point two" of his direct appeal – titling that point as "[w]hether it was fundamental error for appellant to be excluded from critical stages of his trial including jury selection, objections, and legal arguments and at sentencing."  Ex. G at i.  His direct appeal was *per curiam* affirmed by the First DCA.

Respondent contends that the record clearly precludes Petitioner's claim, and notes the unusual procedural history of this case.  Petitioner moved to reconstruct the record before filing his initial brief on appeal.  The First DCA granted the motion, and remanded the matter to the trial court to hold a hearing, because there were instances in the trial transcript where the court reporter was not present at some of the sidebar conferences. The trial court held the hearing and the parties, including the trial court, recollected to the best of their ability what had occurred during these gaps in the trial transcript.  Exs. F-1; F-2.  At the conclusion of the hearing, rather than enter an order memorializing the hearing, the trial court submitted the transcript of the hearing to the First DCA for that court to consider on appeal.  His conviction and sentence was *per*

*curiam* affirmed by the First DCA on direct appeal.  Ex. J.

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit acknowledged the well-settled principle that summary affirmances, such as the First DCA's in this case, are presumed adjudicated on the merits and warrant deference.  *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)).  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion.  *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784).

In this case, the transcript of the hearing to reconstruct the record demonstrates that there was no "fundamental error" in Petitioner's trial proceedings.  The gaps in the trial transcript that the hearing to reconstruct the record was convened to address were located at pages 206, 228, 315-316, 336, 365, 393, and 399 of the trial transcript and page 17 of the sentencing transcript.  At the hearing, Petitioner's appellate counsel withdrew the issue of whether Petitioner attended bench conferences, (page 94) because that was not a proper subject for reconstructing the record.  Ex. F-1 at 4.

Each of the gaps in the record was addressed at the hearing.  The gap at page 206 referenced when the prosecutor approached the bench to ensure the court that matters from a motion in limine would not be addressed by the witness.  *Id*. at 15.  At 228, the gap was because the child witness had just been called, and she had to be brought through the judge's chambers to the witness stand, rather than having to

proceed through the courtroom and next to the defense table.  *Id*. at 17.  At page 315, the prosecutor indicated that it would have been the same issue as in page 206 – where the prosecutor assured the court that the witness would not mention matters from a motion in limine.  At page 336, the parties approached the bench because there had been an objection when the prosecution recalled a witness, and the sidebar concerned whether or not the recall testimony was going to be cumulative.  *Id*. at 19-20. The trial judge recollected that the gap at pages 365 on the transcript was because the judge was speaking with Petitioner outside the presence of the jury about whether he wished to testify in the case.  *Id*. at 13-15.  At page 393 the parties concluded that the gap referenced a discovery issue when the prosecutor objected because defense counsel was referring to divorce paperwork that the prosecutor did not have.  *Id*. at 26. Page 399 encompassed a scheduling matter.  *Id*. at 21. With respect to page 17 of the sentencing hearing, counsel speculated that the gap concerned a discussion about a federal detainer as the reason the Petitioner was not being taken into Department of Corrections custody immediately.  *Id*. at 30.

The prosecutor, Mr. Combs, also noted that in the Liberty County courtroom where Petitioner was tried, the defendant is only about fifteen feet away from the bench such that when counsel approaches the bench it only requires standing and leaning a little forward or stepping around the edge of the table.  He noted that even if the defendant was at the defense table he would be within earshot of the conferences at the bench.  *Id*. at 15.

This record from the hearing to reconstruct the record shows that Petitioner was

not absent from his trial during critical stages.  Even if Petitioner was absent during any

of the above conferences, there is no indication that his counsel was prohibited from

making arguments on his behalf, or that communication with his counsel was inhibited

in any way.  There is also no suggestion that Petitioner's alleged absence during this

time impacted the outcome of his trial in any way.

Accordingly, Petitioner has failed to show that the state court's rejection of this

claim was contrary to, or an unreasonable application of federal law, and should be

denied.

### Ground Three: Ineffective Assistance – Eliciting Testimony Regarding Petitioner's Prior Felony Convictions, Incarceration, and Federal Probation

Petitioner alleges in ground three that trial counsel was ineffective for eliciting

damaging testimony from Petitioner regarding his prior felony convictions, his

incarceration, and his status on federal probation, as well as the existence of a federal

detainer on him.

Petitioner raised this claim in his 3.850 post-conviction motion, and it was subject

to an evidentiary hearing.  The state court, in rejecting this claim on post-conviction

review, wrote:

> Defendant first asserts that counsel provided ineffective assistance by
> eliciting testimony from Defendant regarding his prior felony convictions,
> including the nature of the crimes.  At the evidentiary hearing, counsel
> testified that he elicited the testimony to show the jury that none of
> Defendant's prior convictions were for sexual crimes.  Counsel explained
> that his strategy was to prevent the jurors from speculating that Defendant
> was a prior sex offender.  Defendant cites Bowers v. State, 929 So.2d
> 1199 (Fla. 2d DCA 2006), in support of his claim.  Bowers, however, is
> distinguishable, because counsel in that case elicited testimony that the
> Defendant had previously been convicted of the same type of crime

(Burglary) for which he was then on trial.  Unlike Bowers, counsel's strategic decision in the instant case - to squelch any speculation that Defendant's convictions were for sexual offenses - was reasonable and did not constitute ineffective assistance.  This claim is denied.

Defendant further alleges that counsel provided ineffective assistance by asking him about the fact that he was on federal probation and was incarcerated.  The testimony supported the defense's theory that the allegations in this case were fabricated in order to have Defendant incarcerated during the pendency of his divorce and child custody dispute.  This was a reasonable strategy, and therefore, counsel was not deficient.  Moreover, Defendant has not met the burden of establishing that prejudice resulted from the inquiry.

Ex. K at 74.

The record reflects that at the evidentiary hearing counsel testified that he purposefully elicited this testimony from Petitioner as a matter of strategy.  His strategy was to have Petitioner testify about his prior offenses so that the jury would know that none of them were for sexual offenses.  Ex. L-1.  Counsel made a strategic decision to elicit this testimony.  On this record, the Court cannot say that this strategy by counsel was unreasonable.  However, even assuming it was error to elicit this testimony, Petitioner has not shown that, but for the error, there was a reasonable probability that the outcome of the trial would have been different.  If counsel had not elicited Petitioner's testimony on his previous convictions, the state still could have asked Petitioner whether he had previous convictions during the cross-examination of Petitioner, although the nature of his past convictions would not have been revealed.

On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

***Ground Four: Ineffective Assistance – Failing to Move for a Mistrial***

Petitioner contends in ground four that his trial counsel rendered ineffective assistance by failing to move for a mistrial after the statement discussed in ground one, above, was made.[5]  Defense counsel objected to the statement, the objection was sustained, and the trial judge issued a curative instruction that the jury was to disregard the last statement by the witness.  However, Petitioner alleges the curative instruction was insufficient to cure the prejudice from the statement, and that trial counsel should have requested a mistrial.  Petitioner alleges that his failure to do so constitutes constitutionally ineffective assistance because it did not preserve the issue for appeal. Doc. 1 at 12-14.

This claim was rejected by the state post-conviction court, which reasoned as follows:

> Defendant next claims that counsel provided ineffective assistance by failing to move for a mistrial when the victim's mother stated during redirect examination that she feels Defendant is a "very sick man." and, "This has gone on for generations.  It's a generational–."  The testimony regarding generations reflected the witness's belief that members of the Defendant's family may have committed molestations; it did not indicate prior criminal sexual activity committed by Defendant. The witness's testimony reveals that her hatefulness towards Defendant and her feeling that he is a very sick man are due to the incident that her daughter reported to her.  Contrary to Defendants assertion, the witness's testimony did not indicate prior criminal activity or prior bad acts by Defendant, even in conjunction with the Prosecutor's harmless comment during voir dire, "I wont be going into all this background and a lot of things that maybe you would like to know."  The Prosecutor's explanation, that the evidence presented would focus on the elements of the crime, was not improper.  The prosecutor's comment did not indicate prior bad

---

[5] The statement by the victim's mother during her testimony was: "I didn't curse him out in front of him or anything.  I said that I would pray for him and I hoped that justice would be served, because I feel he's a very sick man.  This has gone on for generations. It's a generational –."

acts and did not exacerbate the victim's mother's testimony.  The victim's mother's testimony at issue was brief and did not become a feature of the trial.  The testimony as not highly inflammatory and did not undermine the fairness of the trial.  Counsel objected to the testimony, and the jury was instructed to disregard the comment.  The instruction cured any prejudice, and Defendant was not deprived of a fair trial.  A motion for mistrial would not have been granted.  This claim is denied.

Ex. K at 74-75.

The state court found that it was not deficient performance for counsel not to move for a mistrial, and additionally found that a motion for a mistrial would not have been granted.  Trial counsel testified at the evidentiary hearing that he did not believe the comment, which he objected to, was very damaging.  On this record, the Court cannot find that counsel was deficient.  However, even assuming it was error for trial counsel not to move for a mistrial, Petitioner has not shown that, but for the error, there was a reasonable probability that the outcome of the trial would have been different.  In this case, the jury was issued a curative instruction to disregard the witness's previous comment, as discussed above.  Jurors are presumed to follow the instructions given by the trial court.  *See, e.g., Raulerson v. Wainwright*, 753 F. 2d 869, 872 (11th Cir. 1985).  There is also no indication that even if counsel had requested a mistrial that it would have been granted.

Petitioner's speculative argument regarding prejudice is not enough to carry his burden of proof and persuasion as to the prejudice prong of *Strickland*.  The evidence does not demonstrate that this statement had an impact on the jury's ultimate determination of guilt.  *See Coleman v. Giles,* 140 Fed. Appx. 895 (11th Cir. 2005) (rejecting habeas petitioner's ineffective assistance of counsel claim where trial counsel

did not request a curative instruction, jury poll, or move for a mistrial after an outburst by

the victim's grandmother).  The Eleventh Circuit in *Giles* also noted after a

grandmother's outburst at the man accused of raping her 13-year-old granddaughter,

"the jury would have gleaned nothing new, nor been informed of anything other than the

grandmother was understandably upset at the man the state accused of raping her

granddaughter."  *Id.* at 900 (citing *Kinnamon v. Scott*, 40 F.3d 731, 734 (5th Cir. 1994)).

Similarly, the jury here would have been informed that the victim's mother was

understandably upset at the person charged in her daughter's molestation.

On this record, Petitioner has failed to show that the state court's rejection of this

ineffective-assistance claim was contrary to or an unreasonable application of

*Strickland*.

### Grounds Five: Ineffective Assistance – Failing to Remove Juror Flowers; and Six: Ineffective Assistance – Failing to Have Petitioner Present During the Questioning of Juror Flowers

Petitioner claims in ground five of his Petition that defense counsel was

ineffective for failing to remove juror Flowers from the jury even though Mr. Flowers

knew Petitioner, knew that he had been convicted of a federal offense and had gone to

federal prison, and had an adverse relationship with Petitioner's family. Doc. 1 at 15-16.

Petitioner contends in ground six that trial counsel was ineffective for "failing to

have Defendant present during the questioning of juror Flowers."  Doc. 1 at 17.

Petitioner argues that if he had be present at the sidebar questioning of juror Flowers,

Mr. Flowers would have been stricken.

Petitioner raised these two claims as grounds three and four of his state post-

conviction motion.  The state court addressed these two grounds jointly, writing:

> Defendant next alleges counsel provided ineffective assistance by failing to strike Mr. Flowers from the jury.  Specifically, Defendant alleges that his nephew had an adverse relationship with Mr. Flowers' son and that Mr. Flowers knew Defendant has prior felony convictions and has been in federal prison for possession of a firearm by a convicted felon.
>
> Defendant first claims counsel should have stricken Mr. Flowers from the jury, during jury selection, when Mr. Flowers was asked whether he could put aside his knowledge of Defendant's prior conviction and answered, "I could, I think, but I just wanted to make it known that I knew, just in case." As discussed below, Defendant was not prejudiced by Mr. Flowers personal knowledge of his prior conviction.  Moreover, Mr. Flowers' response pertained only to the issue of the prior conviction. When Mr. Flowers was asked about his relationship with Defendant and his family, he expressed that he had no negative impression of Defendant, that he and Defendant "always got along pretty good," and that his relationship with Defendant and Defendant's family would not affect his consideration in the case.  Mr. Flowers' response did not indicate a reason to strike him from the jury or to ask further questions. Counsel was not deficient.
>
> Defendant next claims that he was prejudiced by not being present at the sidebar when the above-mentioned questioning occurred.  At the evidentiary hearing, Defendant affirmed that at the time of the jury selection he was unaware of the alleged animosity between his nephew and Mr. Flowers' son.  Defendant has not established a reasonable probability that the outcome would have been different had he been present for the sidebar.
>
> To the extent Defendant also claims that he personally had an adverse relationship with Mr. Flowers, he could have informed counsel at any time before or during jury selection.  Defendant and counsel reviewed the list of potential jurors days before jury selection, and Defendant did not indicate a problem with Mr. Flowers. Defendant also failed to indicate the alleged adverse relationship during jury selection, either verbally or on his selection form.  Defendant and counsel conferred throughout jury selection, and defendant consented to color-coding Mr. Flowers as green, meaning good.  Counsel was not deficient.
>
> Defendant next claims that, after the jury was empaneled, he and his mother told counsel that Defendant's nephew and Mr. Flowers' son had an adverse relationship.  There is no indication that Mr. Flowers was biased against Defendant as a result of the alleged adverse relationship

with Defendant's nephew.  Defendant has not shown a reasonable
probability that the outcome would have been different, but-for Mr.
Flowers' presence on the jury.

Ex. K at 75-77.

Counsel testified at the evidentiary hearing on the 3.850 motion that he and

Petitioner reviewed the list of potential jurors days before trial and color-coded juror

Flowers "green," which was for a good juror.  If Petitioner was aware of any animosity

between himself and Mr. Flowers, Petitioner had ample opportunity before, and during,

jury selection to voice his concerns to his counsel. Taking into account all statements

made by Mr. Flowers during voir dire, reasonable defense counsel could have chosen

not to strike him from the jury.  *See Owen v. Fla. Dept. of Corr.*, 686 F. 3d 1181, 1198

(11th Cir. 2012) (holding that where potential jurors made statements in voir dire that

indicated that they could be favorable to the defense, it was not deficient performance

for counsel not to strike them).  Accordingly, the record does not support a conclusion

that trial counsel was deficient for failing to remove juror Flowers.

The record also does not support a conclusion that trial counsel was ineffective

for failing to have Petitioner present at the sidebar in which juror Flowers was

questioned.  Petitioner and his counsel had already discussed the potential jurors at

that point, and color-coded Mr. Flowers as green.  Trial counsel also conferred with his

client throughout jury selection, and Petitioner had ample opportunities to indicate

whether he had a problem with Mr. Flowers as a juror.

Further, Petitioner did not suffer any prejudice because of the fact that juror

Flowers was aware of his prior federal conviction and imprisonment.  This information

was purposefully brought to the jury's attention during trial, as discussed above.  Juror

Flowers was also forthcoming to the state court about his knowledge of Petitioner's

conviction, and affirmed that he could put aside his personal knowledge of the

conviction.  Mr. Flowers also stated that he had "always got along pretty good," with

Petitioner.

Therefore, on this record, Petitioner has failed to show that the state court's

rejection of this ineffective-assistance claim was contrary to or an unreasonable

application of *Strickland*.

### Ground Seven: Ineffective Assistance – Failing to Call Jeannot Philistin as a Witness

Petitioner alleges in ground seven of his Petition that his trial counsel rendered

ineffective assistance in failing to call Jeannot Philistin, a Department of Child and

Family Services investigator, as a defense witness.  According to Petitioner, Ms.

Philistin could have impeached the father of the victim.  Petitioner contends that this

would have bolstered the trial strategy that the charges were fabricated.  Petitioner

raised this claim as ground five of his state post-conviction motion.  In rejecting this

claim on postconviction review after an evidentiary hearing, the state court wrote:

> Defendant claims counsel provided ineffective assistance by failing to call
> Child Protection Investigator Philistin as a witness to impeach the victim's
> father, [name omitted.]  At the evidentiary hearing, counsel explained his
> tactical reasons for not calling Investigator Philistin, including his
> determination that calling the investigator would have done more harm
> than good.  Counsel's tactical decision was reasonable. Counsel did not
> provide ineffective assistance.   Ground 5 is denied.

Ex. K at 77.

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses

impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).

Trial counsel testified at the evidentiary hearing that he did not call Ms. Philistin to impeach the victim's father because he felt that the father was at least a neutral, if not a positive witness for the defense, and thus impeaching him was not helpful for the defense. It also would have revealed that Petitioner was previously investigated for complaints about sexual offenses, which went against trial counsel's strategy of eliciting his past convictions to show that he had never been convicted of a sexual offense. On this record, the Court cannot say that trial counsel's strategy not to call this witness was deficient.

However, even assuming, *arguendo*, that trial counsel was deficient for failing to call this witness to testify, Petitioner has not demonstrated prejudice. Petitioner cannot show that even if the father of the victim had been impeached by this witness, if counsel had called Ms. Philistin to testify, that but for trial counsel's failure to call this witness to testify he would have been acquitted.

On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Ground Eight: Ineffective Assistance – Voir Dire Lacked Meaningful Examination

Petitioner contends that his trial counsel rendered ineffective assistance by failing to question the prospective jurors regarding their feelings about the type of

offense in his case -- a sex crime on a minor.  Petitioner argues that this resulted in a

biased jury.  Doc. 1 at 22.

Petitioner presented this claim as ground six of his 3.850 motion. In rejecting this

claim, the state court reasoned as follows:

> Defendant concludes that counsel provided ineffective assistance during
> voir dire by not asking the potential jurors about their sensitivity to the
> nature of the charges and their ability to be fair and impartial if they
> learned Defendant's criminal history.  Defendant raises the possibility that
> members of the jury could have been biased.  This constitutes
> speculation.  Notably, during jury selection, the potential jurors were asked
> if they could be far and impartial.  The mere possibility that a juror or
> jurors could have been biased is insufficient to establish prejudice.
> Furthermore, at the evidentiary hearing, counsel explained his reasons for
> conducting voir dire as he did.  The Court finds that counsel's jury
> selection strategy was reasonable, counsel was not deficient, and
> Defendant did not establish prejudice.

Ex. K at 77-78.

At the evidentiary hearing, counsel testified that when the charging information

was read to the jury he looked at the jurors and the way they reacted.  He also

mentioned that the judge asked the jurors whether they could be fair and impartial and

therefore he did not find it necessary to ask them the same question himself.  Counsel

testified as to his jury selection strategy, which was specific to a rural county like Liberty

County, the county where the offense was committed.  Counsel stated that asking

members of a small, conservative county about their feelings regarding a particular

crime was not always effective because "they're not going to get up there and act like

something upsets them."  Ex. L-1.  On this record, the Court cannot conclude that

counsel was deficient.

However, even assuming, *arguendo*, that trial counsel's performance was

deficient for failing to ask the jury pool about their sensitivity to this type of crime and their ability to be fair and impartial, Petitioner has failed to show prejudice.  To show prejudice, Petitioner "must show that at least one juror was biased; if no juror were biased, then there is no 'reasonable probability that. . . the result of the proceeding would have been different.'" *Owen*, 686 F. 3d at 1201 (quoting *Strickland*, 466 U.S. at 694).  Petitioner has put forward no facts to indicate that any member of the jury was actually biased.  Other than his conclusory allegations, Petitioner has not demonstrated a reasonable probability that but for counsel's failure to question the jury pool on these issues the outcome of the trial would have been different.  On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

### Ground Nine: Ineffective Assistance – Failing to Object to the Stacking of Books around the Witness Stand

Petitioner contends in ground nine that his defense counsel should have objected to the stacking of books on the witness stand.  Prior to trial the prosecution had sought to present the testimony of Petitioner's daughter by closed circuit video. The trial judge denied that request, considering Petitioner's confrontation clause rights, and instead determined that statute books would be stacked on the witness stand during the testimony of Petitioner's daughter so that she would not have to see her father.

Petitioner asserts in his Petition that the books were present on the stand during

the entire trial, "instead of just during the testimony of" his daughter.[6]  He states that it

was error for counsel to object to the books presence especially "in this type of case

because most of the witnesses were either family members or friends."  Doc. 1 at 24.

Respondent notes that Petitioner does not appear to contest the use of the books

during his daughter's testimony, and argues that nothing in the record demonstrates

that the books were stacked up for anything but the daughter's testimony. Doc. 7 at 22.

The state court rejected Petitioner's claim on post-conviction review after an

evidentiary hearing, and wrote:

> Defendant asserts that the stacking of books on the witness stand violated
> the confrontation clause because they blocked his view of the witnesses
> and vice versa.  Notably, there is no suggestion that the books blocked
> the jury's view of the witnesses.  This claim would typically not be
> cognizable in a 3.850 motion and would have to be raised on direct
> appeal, however, Defendant couches his claim in terms of ineffective
> assistance and claims that his attorney should have objected to the
> books.  Defendant does not assert a failure-to-preserve claim.  Thus, the
> prejudice analysis for Ground 7 is limited to whether there is a reasonable
> probability that the outcome of the trial would have been different but-for
> the alleged obstruction.
>
> Before trial, the State filed a motion to present Defendant's daughter's
> testimony by closed circuit video.  The defense argued against using
> closed circuit video.  The Judge specifically considered Defendant's rights
> under the confrontation clause to be able to confront witnesses against
> him.  The Judge decided to stack the books at a height that would block
> the "not very tall" child from seeing Defendant, rather than using closed
> circuit video.
>
> Defendant did not prove that counsel was deficient.  Counsel testified at
> the evidentiary hearing that the witnesses looked around the books and
> were visible to Defendant from the defense table.  During his daughter's
> testimony, Defendant's seat was moved further to the side, in an area that

---

[6] Petitioner, and Respondent, refer to the use of the books during the testimony of "the victim." However, this appears to be an error.  According to the record, the books were set up in order to block Defendant from view of his daughter, not the victim.  *See* Doc. 1 at 23-24, and Doc. 7 at 21-22.

was less visible to the child.  The confrontation clause was not violated by blocking the view of his daughter, because it was shown that the child would suffer harm by testifying openly.  With the exception of Investigator Swier and the re-call of Sharon Hiling, the State's witnesses– including the victim– testified before Defendant's daughter testified.  Defendant did not establish where he sat after his daughter's testimony, during Investigator Swier's testimony.  Sharon Hilling testified on re-call the next day.  Defendant does not seem to allege, and certainly did not establish, that he sat to to side again when the court reconvened the next day.

Nonetheless, regardless of whether counsel was deficient, Defendant has not established a reasonable probability that the outcome of the trial would have been different if counsel had raised a confrontation clause objection.  Ground 7 is denied.

Ex. K at 78-79.

The state court correctly pointed out that Petitioner's claim is that trial counsel was ineffective for failing to object to the presence of the books, not that his actual confrontation clause rights were violated.  There is no evidence to support a conclusion that counsel was ineffective for failing to object to the books.  The books were specifically placed there pursuant to the trial judge's ruling to accommodate the daughter's physical presence during her testimony, rather than presenting it via closed-circuit video, which the defense had objected to.  Furthermore, even if Petitioner's assertion that the books were left on the witness stand for the entirety of the trial, he cannot show prejudice.  The jury was still able to see and hear the witnesses clearly, and Petitioner has not shown that his examination of the witnesses was hampered in any way by the books.

On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

### Ground Ten: Ineffective Assistance – Failing to File a Meritorious Motion for New Trial

Petitioner contends that trial counsel was ineffective for failing to file a motion for new trial that contained "arguments that would have required the granting of a new trial." Doc. 1 at 25. Defense counsel did in fact file a motion for new trial, but Petitioner complains that it was "generic," and the motion should have "relied upon the improper testimony of Sharon Hilling (generational comments), the comment by the prosecutor in voir dire that 'I won't be going into this background and a lot of things that maybe you will like to know,' and finally, the community conscience argument that was made by the prosecutor in closing argument that the issue of sexual abuse was a societal problem." Petitioner argues that if counsel had included these issues in the motion for new trial, "the trial court would have been required to grant the motion." *Id.*

The state court rejected this claim on post-conviction review, writing:

Defendant alleges counsel provided ineffective assistance by filing an insufficient motion for new trial. Defendant claims counsel should have based the motion for new trial, in part, on Ms. Hilling's testimony and comments made by the State during voir dire and closing argument. As addressed in Ground 2, the jury was properly instructed to disregard Ms. Hilling's comments, and the State's comments during voir dire and closing argument were not improper. Defendant's substantial rights were not prejudiced by these purported additional grounds from the motion for new trial. Furthermore, there is no reasonable probability that the outcome would have been different, because even if these grounds had been included, counsel's motion still would have been denied. Counsel did not provide ineffective assistance. This claim is denied.

Defendant additionally asserts that by not including these grounds in the motion for new trial, counsel failed to preserve the alleges errors for appeal. The *Strickland* prejudice prong focuses on the trial outcome rather than wether the defendant's appellate rights were affected. Accordingly, for the above-reasons, Defendant was not prejudiced. Moreover, even if the prejudice prong extends to the appellate outcome,

Ground 8 is denied because counsel was not deficient and there is no reasonable probability that including the additional grounds in the motion for new trial would have resulted in a different outcome on appeal.

Ex. K at 79-80.

Counsel cannot be deficient for failing to file a motion which he did in fact file. Furthermore, the state court found that even including the grounds that Petitioner says where omitted would not have resulted in the motion being granted.  Therefore, Petitioner cannot show prejudice.  On this record, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

### Ground Eleven: Ineffective Assistance – Failing to Investigate Statements by Defendant's Wife and Call DCF Investigators as Witnesses

Petitioner contends in ground eleven that his trial counsel rendered ineffective assistance by failing to investigate allegations made by his then-wife about previous allegedly inappropriate behavior with his children.  According to Petitioner, if counsel had investigated these allegations, he would have found that DCF investigators on that case determined the allegations to be unfounded.  Thus, Petitioner argues, counsel should have called these witnesses to testify to show that the previous accusations were unfounded.  This ground is similar to the claim raised by Petitioner in ground seven of his Petition, and it was also rejected by the state court, which held:

> Defendant next asserts counsel provided ineffective assistance by failing to call DCF investigators as witnesses at trial.  Defendant claims that the DCF investigators would have testified that a prior complaint filed by Defendant's wife was determined to be unfounded.  At the evidentiary hearing, counsel explained that his strategic reason for not calling the DCF investigators at trial.  Counsel's tactical decision, that their testimony would probably be detrimental to Defendant, was reasonable.  Counsel

did not provide ineffective assistance.

Ex. K at 80.

This claims fails for the same reason as the claim in ground seven.  Trial counsel testified at the evidentiary hearing that he did not call these investigators because it would have revealed that Petitioner was previously investigated for complaints about sexual offenses, which went against trial counsel's strategy of eliciting his past convictions to show that he had never been convicted of a sexual offense. Furthermore, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).  On this record, the Court cannot say that trial counsel's strategy not to call the investigators as witnesses was deficient.

However, even assuming, *arguendo*, that trial counsel was deficient for failing to call this witness to testify, Petitioner has not demonstrated prejudice.  Petitioner has not shown that but for trial counsel's failure to call these witnesses to testify, he would have been acquitted.

On this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Ground Twelve: Ineffective Assistance – Cumulative Error

Lastly, Petitioner alleges that the cumulative effect of trial counsel's errors amount to a deprivation of his constitutional right to effective counsel.  The

postconviction court rejected this claim finding no error in any of the other grounds he raised and concluding that there was no cumulative effect.  Ex. S.

In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009)(*per curiam*).  The *Forrest* panel noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.")

As discussed above, Petitioner has not demonstrated that any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance. Therefore, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel nor has he demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate.  Petitioner was not denied effective

assistance of counsel, and he has not demonstrated that his trial was fundamentally

unfair.")  Accordingly, Petitioner's last claim for relief has no merit.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of

appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct

the parties to submit arguments on whether a certificate should issue."  Thus, if there is

an objection to this recommendation by either party, that party may bring this argument

to the attention of the district judge in the objections permitted to this report and

recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person
in State Custody (Doc. 1) should be **DENIED**.

*Case No: 4:11-cv-460-WS-GRJ*

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS**, at Gainesville, Florida, this 6th  day of August 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.